and begin with argument in People's Club of Nigeria International versus People's Club of Nigeria International. Good morning. May it please the court, I'm Daniel Krish from Halloran and Sage. I represent the plaintiff appellant. Your honors, the district court improperly dismissed the plaintiff's complaint despite the lack of a legal certainty that the plaintiff could not prove a sufficient amount in controversy and did so with six weeks to go until the court's own discovery deadline, despite knowing that the parties plan to depose three more witnesses on the issues of damages and financial information. So the main issue is the incredibly high hurdle that faces any defendant when they move to dismiss on this basis. And it's a high hurdle for two reasons. One is, of course, that 12b1 requires the court to read the complaint in a light most favorable to sustaining its validity. You can't weigh evidence. You have to accept the allegations as true. And if you're going to decide any disputed issues of fact, you have to hold a hearing. Can you explain how you would have, from the discovery, would have gotten additional information on what your client's damages were? Doesn't your client know what the damages are? Not all of them, your honor, and the reason why is some of the damages are revenue that presumably my client would have gotten, but that the defendants got because they held this rival induction ceremony. The court did, in lieu of that, is basically give you the best case scenario that you could ever imagine in terms of revenue, right? No. Judge Bianco, that's, and I hope you are. I'm not good at math, but the max amount of damages under the MOU was 24,000, right? Under the MOU, yes, that's correct. And the loss, I think, it was estimated that the loss for the advertising ticket sales was $5,600. That's, I'm sorry, yes, that's correct. That's what the judge gave us credit for, but first she discounted another $5,200 in lost ad revenue. So let's say you got 80 pages, 5,200, you're still, we're still like in the... 34,800, Judge. Where's the other $40,000 going to come from? Well, first, in terms of economic damages, we don't know because there were six weeks until the discovery deadline. What other sorts of revenue, raffle ticket sales, other advertisements, the defendants generated at their rival induction ceremony, which... Thinking about the raffle, if 80 people came, right? What's the most people could ever, 100 people, right? 100 people would be a lot of people, right? 100 inductees would be a lot of inductees. They bring family members, friends. 28 inductees, so if everyone brought three people, four people, but they each brought $100 worth of raffle tickets. We're talking about another $10,000. We're not even close. Judge, I agree that the economic damages don't get us to $75,000. What the court did improperly was ignore our claims for punitive damages and injunctive relief, which have value and... Speaking of punitive damages. Yes. I did some research under Connecticut law. I mean, you can correct me if I'm wrong. In the history of Connecticut, the Supreme Court of Connecticut says ordinarily punitive damage is not recoverable in contract. And there's no case other than outside of the insurance context. The only case in the history of Connecticut where punitive damage has been awarded in a contract case is for a bad-faith insurance company claim. So I don't know where that would come from. Well, that's the district court's... Respectfully, Judge, that's the district court's error. We had two other counts in our complaint that entitled us to punitive damages other than the breach of contract count. We had a tortious interference claim and we had a bad-faith claim. The judge analysed it solely under the breach of contract count. The bad-faith claim is with... ..is with the contract claim, right? No, it's a separate count and a separate cause of action. Under Connecticut law? Under Connecticut law. With separate elements. And, of course, so is tortious interference. The point of both of those causes of action is they have mens rea requirements which dovetail with the requirements for punitive damages. If that claim is subsumed in the breach of contract claim, I'm having a hard time understanding. If in this MOU there's penalties for not complying with this ceremony, right, not participating in it under the MOU, there's penalties, doesn't that cover what the damages would be? You think even in that situation when the parties say, OK, if you don't follow this, here's what the damage is going to be, that you're going to be able to tack on, then, an interference with contract claim on top of that? A tortious interference? Certainly, if we prove the elements of it. It's a separate count of the complaint. Most importantly, at this stage of the case, the judge can't discount the merits of the counts alleged in our complaint, the causes of action. She has to accept them as true. And if you look at the allegations in our complaint, specifically paragraphs 11 to 14, 18 to 24, right, they allege facts that certainly show reckless indifference. They show surreptitious conspiring by these two other branches. They show a sudden decision. Contracts were interfered with. What contracts? Tortious interference with our contractual right to hold the ceremony. Tortious interference with. That doesn't count. You can't, it has to be some other contract other than the contract you entered into with them. No, respectfully, that's not correct under Connecticut law. Under Connecticut law, so every time you breach a contract, you've also tortiously interfered with that contract? If you prove the separate elements, breach of contract doesn't require an intent element. If you prove the separate elements for tortious interference, certainly you can. And of course, we have a separate bad faith count. Which case do you have that says if you breach a contract between you two and another party, that can also be the basis of a tortious interference claim in and of itself without a separate contract that's been interfered with? What case do you have? I don't have a case, Judge, that says that specific thing. But they are separate causes of action with separate elements. There's no case, I can confidently say there's no case under Connecticut law that says you can't plead that. But the point is that at this stage of the case, the judge can't decide the amount of controversy requirement by deciding the merits or lack of merit of our causes of action. She has to accept them as true. She can ask for things outside the pleading. When a motion is made, a district judge can say, OK, you're the plaintiff. Tell me what contracts were interfered with here. In your opposition, for example, to the motion to dismiss, you didn't say, here's the contracts that were interfered with, here's the value of those contracts. There was nothing about that in your opposition. It was only the revenue, the breach of the agreement itself and what was the penalty for that, and the lost revenue. There was nothing about, here are 10 contracts that we had that I'm not claiming other contracts other than the MOU. Judge, we didn't argue that. I'm saying that you can have two separate causes of action based on one nucleus of facts. That's a very basic rule of civil procedure, that you can allege multiple causes of action out of one nucleus of facts if you can prove the separate elements of them. And again, and I'm sorry, I don't mean to belabor this point, but it wasn't proper for the district court to judge, to the extent that she did, judge the merits of whether we would succeed on our other causes of action that would entitle us to punitive damages. And look at the AFA tours. You went to trial, Mr. Kirsh, and got all the way through the verdict and only got a verdict for $50,000. Does the court dismiss it for lack of jurisdiction at that point? No, and the law on the circuit's very clear. You judge the value at the time the complaint was filed. And as long as there's a good faith basis at the time the complaint is filed to allege in excess of $75,000, it doesn't, subsequent events, even a subsequent finding a trial of a value lower than that doesn't divest the court of subject matter jurisdiction. The statute provides a remedy under those circumstances, does it not? Yes. What is that? I'm sorry, what? What's the remedy if you don't prove your $75,000? I said the remedy for the defendants. They pay less than $75,000. Jurisdiction is not, doesn't, I'm sorry. Yeah, go ahead. Jurisdiction doesn't require the defendants to have a remedy to get out of court. I think the point of the AFA White Church, Colavito, Scherer, all the recent decisions of this court are that you don't embroil the merits of the case and the decisions about the validity or invalidity of the cause of action with the predicate question of, does the court have diversity jurisdiction? Because that would be an impossible legal tangle to figure out for the, in, for example, the hypothetical that you posited. I'm just looking at a mountain controversy. Which is under Scherer, under Colavito, judged at the time of the complainant's file, unless there's absolutely no good faith basis for it. This is the test in Scherer. And I know your honors are familiar. I should go back, because I'm thinking about what you said. Let's assume, for the sake of argument, under Connecticut law, you could bring a tortious interference claim for the actual contract that you had with the other side, right? The damages would be the same with the exception of potentially punitive damages, right? Correct. OK. So isn't the law that, I think, I've saw a number of cases that said that in connection with jurisdiction, that a court can look at, can scrutinize punitive damages, and whether or not there's a possibility of it being recovered in a particular case, right? You scrutinize it more carefully than compensatory damages. But they're still deferent. I'm sorry. You don't have to accept the plaintiff's claim for punitive damages. You can look at it and say, is this a case where this is really something that's live? Yes, that's correct, Judge Bianco. But if you look at the AFA Tours case, what you look at is not, will you recover? Is it likely that you'll recover? Even if it's unlikely you'll recover punitive damages, what matters is, do the causes of action give you the right to seek punitive damages? And have you alleged enough facts to meet a prima facie case for those causes of action, right? In AFA Tours, the court said it seems unlikely that they'd prove it. The search in Connecticut won't find no case where someone has gotten punitive damages for breaching their own contract with someone else. That wouldn't be enough to say, as a matter of law, we're not going to count punitive damages in this case? No, because we have two causes of action other than breach of contract. For tortious interference, if there's no case in the history of Connecticut law that has awarded punitive damages for interfering with your own contract with another person, even assuming that claim exists, why wouldn't that be a basis for a district court to say, you know what? I'm not going to consider punitive damages here. It's never happened in Connecticut law in the history of the State. Judge, I know this Court, of course, can affirm on any basis in the record, even if the district court didn't reach it. That's certainly not what the district court did. The district court said it's a conclusory. Punitive damages are a conclusory here. That's essentially what I'm saying, is that it's a conclusory. I think you're saying it in much more detailed and thoughtful fashion than the district. I'm not trying to be obsequious. And the district court didn't reach any of those sort of more thorny questions. The district court just said, there's no plausible allegations here. And that's simply not an accurate reading of our amended complaint. Our amended complaint alleges facts that show reckless indifference, that show willful and wanton misconduct, viewed in a light most favorable to sustaining the validity of the complaint. Thank you, Mr. Krish. You've reserved two minutes for rebuttal. Thank you. Ms. Flynn. Good morning, and may it please the Court. My name is Erin Flynn from Claren-Gertson for the defendant appellees. In this case, we do believe that the district court properly dismissed the case for plaintiff has failed to meet its burden to a legal certainty that it could that its complaint shows that it meets the diversity jurisdiction requirement. I would like to address some of the later points in plaintiff's argument first to get them out of the way.  The plaintiff was given the opportunity to either supplement their claim or defend this action. However, they were given the opportunity to oppose the motion to dismiss, and their plaintiff was allowed the opportunity to put in affidavits and additional facts to that. So I do not believe that their argument that they were not given the appropriate and reasonable opportunity has any merit. In this case, also, as we have gone through, the amount of actual economic damages claimed, given, treated in the most reasonable light to the plaintiff, can only reach $29,600. We actually dispute that that's the amount that they could get, because the contract does have two separate damages clause, which we do believe are an opposite, and they only could get one set of those damages, not two, but even given in the most favorable light to the plaintiff, that would be the total amount. As stated, the punitive damages must be treated to a closer scrutiny than actual damages, and their ---- Scalia, you're not saying they're not entitled. You're not arguing they're not entitled to punitive damages. It just needs more scrutiny. They haven't laid out how they would be entitled to it. Would you answer my question? Yes. We don't know yet if they even are entitled to it. We haven't laid out they haven't had the opportunity yet to lay out the theory under which they would be entitled to it, and they should have in their opposition to the motion to dismiss if they felt they were truly entitled to it. Instead, they made solely conclusory statements that they are entitled to it. See, I'll tell you what troubles me, and maybe you can help me with this. It seems to me that Congress has essentially provided ---- that it's a fairly ---- one, it's a fairly loose standard, unless it's absolutely clear or virtually clear or whatever our standard is, but it's a very high standard that unless we reach that level of clarity within the pleading itself, the complaint, that you're never going to get $75,000 or anything close to it, then they get to proceed on diversity jurisdiction, and the remedy is, which is what I was asking Mr. Critch about without feeding him the answer, is if they only prove $50,000 in damages, you guys get costs from them, and Congress has provided for that. So it seems to me that Congress, in its wisdom, has not set a high bar for pleading ---- you know, for pleading jurisdictional amount. But the case law does go into how Congress has now increased the case in that every That's right. That's because they don't want all these dinky little cases coming up. But I'm not sure this is, you know, they've asserted we've got $75,000. They're going to pay a penalty if they don't prove $75,000, unless you guys settle. Correct. But this is also a case where it could have been brought in one of three different State courts, and it would be they wouldn't have this jurisdictional argument. They chose to bring it in the Connecticut District Court, and they chose to avail themselves of the $75,000 requirement, knowing very well they can't seem to prove it, and are relying solely on punitive damages, which are very speculative. Says who? I mean, why are they speculative? They haven't laid out any facts in their opposition as to why they're entitled to it. They laid out the most facts today in their oral argument as to claiming case law and why they're entitled to it. If this was the case, it should have been brought in their opposition to the motion to dismiss if they were relying so heavily on the punitive damages. Not that it makes any difference. If I were the trial judge, probably this, you know, I have a hard time discounting a claim. I mean, having, I will say, having a background, at least part of my background in trying tort cases, both on the plaintiff's side and a lot on the defense side. It's rare I've seen one dismissed for, in fact, I can only think of two that I've encountered that have come close to being dismissed for lack of jurisdiction in the amount in controversy. This was a clear contract and. But there were other aspects of it, too. All of those aspects stem from the contract. And the contract does include all the different penalties that could be awarded. Given every reading to the most favorable light of them, this is the maximum amount they could get. What about the discovery that was pending? One of the arguments is that it was a couple of weeks away. There were three depositions, I guess. We had conducted no discovery yet and exchanged no discovery. We had discussed it and possibly setting up dates knowing that the Court was having a phone call with us. Right. But in the phone call, the judge said, I think I'll see you at summary judgment. And then the decision came down. So why wouldn't the additional discovery potentially have provided more clarity on this? Because they are the plaintiffs are the ones who are in possession of all of their actual economic damages, even damages to reputable clients. What if your clients had essentially engaged in tortious activity and said, we're going to screw the contract, to use the technical legal term, and we're going to go forward and try to gather in all of these folks and do, you know, the events that they would have been entitled to produce. And we're doing that for, you know, so we can get an economic jump. They had that information. And that's actually the information they relied on in their complaint to calculate it. They had the information of how many people actually did attend and were inducted at the other ceremony. Yes, they don't have the actual information of maybe how many raffle tickets were sold, but they knew the participants. They knew the inductees. I know there were 28 inductees. How many people attended the other ceremony? I didn't see that anywhere. Was that in there somewhere? That was the assumption that they would all bring one to two. It wasn't an actual number. Correct. That, I think, is taking it in the most favorable light possible. Anything further to explain? No, Your Honor. Thank you. Mr. Krish. Thank you. First, Judge Hall, I do think it matters what you would do if you were the trial judge, because it's de novo review. There's no deference to the ruling. If you look at this, this is page 63 of the joint appendix. This is our amended complaint. This is what we alleged and might have been able to flesh out if we had had the chance to conduct depositions upon information and belief. Throughout 2017 and spring of 2018, the defendants surreptitiously conspired to breach the MOU, disrupt disorder and co-opt the ceremony, on June 22, 2018, without forewarning to the other MOU signatories, and notwithstanding their aforementioned pledges, representations, and contractual commitments, the This is all stuff that supports the punitive damages claim, and had we had time to complete discovery, as Judge Bianco pointed out, there was a specific discussion of that in the discovery status teleconference. Everyone agreed that we could conduct the last three depositions in the time provided. We might have had more facts to support our punitive damages claim. The one thing that I didn't get a chance to discuss, of course, is we also had a relief, which is harder to quantify, but does have to be taken into account when looking at the $75,000 threshold. The initial injunctive relief was to try to stop them from, right, it was immediately, that wasn't obviously available. Right. So what was the injunctive relief that you would obtain at the end of this case? Don't do this in the future. Some sort of an injunction designed to prevent. They could never have a ceremony in the future, I understand. They could never break their contractual commitment to rotate the hosting of the ceremony among the signature branches. There's no contract at that point, right? If they breach the contract, the contract is over. They're going to be bound in perpetuity by that MOU? Well, an injunctive claim is equitable, Judge Bianco, if the Court thought that was equitable. But again, at the stage of the case that we're at, the Court can't judge the merits of the claim when deciding if it has any value. It's certainly harder to claim. I'm sorry. You've yet to give me any case in the history of Connecticut either for breach of contract itself or for tortious interference of your own contract where anybody has ever gotten punitive damages in the history of Connecticut. So that's my problem. Well, no, Judge Bianco, there are numerous bad-faith cases. The only bad-faith case that exists in Connecticut, I looked it up, is an insurance case, bad-faith insurance claim. As a matter of fact, there's a discussion by a Connecticut court saying we've never awarded punitive damages. And there was an employee who wanted to argue bad faith of a breach of an employment contract, and the Connecticut appellate court said it's not available for an employee who was claiming bad-faith breach of an employment contract. Punitive damage is not available. It's limited to insurance cases. Or employment, an employment contract. That's true, Judge. This is not an employment contract. This is a commercial contract. If you look at the Capstone Buildings case that we cite in our brief. That's the one. Right. Right. But that's about — it was not a commercial. That involved bonds. They limited it to an insurance case. It was for attorney's fees. Punitive damages, getting attorney's fees in the insurance context. Punitive damages in Connecticut are always limited to attorney's fees, Judge Bianco. And the Capstone case doesn't just say only in the insurance contract context can you ever recover claims for bad-faith breach of a contract. It says that if you breach the implied faith covenant of good faith and fair dealing in how you carry out your contractual commitments, one potential recovery is punitive damages, is your attorney's fees. In the Barry v. Posse seal case, Connecticut appellate court in 1996, they specifically — that's the one I was talking about with the employment contract. They said punitive damages are essentially limited to insurance cases. But that's not the law in Connecticut, Judge. If you look at the Capstone Buildings case, Connecticut Supreme Court, 2013, cited in our brief. And, of course, you can get them as well for tortious interference. Capstone is 67 — That's an insurance case. It was in footnote 40 of the case. Yes. It says if you fail to indemnify in bad faith, you may face liability for punitive damages. That was footnote 40 that you cited. Yes. I understand that, Judge. But that case does not — and I don't mean to be argumentative. That case does not say that only in the context of breaching an insurance contract can you recover punitive damages. It says if you satisfy the elements of bad faith, you can recover punitive damages. It comes up mostly, I agree, in the insurance context, because that is where you often see claims for bad faith. All right. So let's take a little break from this, and let me ask both of you — and if you've been through this process, I do not want to know anything about the result. Did you guys go to camp? We did. All right. And obviously you're here, so I know what the answer to that question is. I would just observe, putting on the district court robes that I never was privileged to and I'm not speaking — certainly don't know how my colleagues would come down on the answer here. Is this something you all can get together on, get a mediator and perhaps get straightened out and save your clients a lot of money? And you don't have to answer that question. That's a rhetorical one and an observation from the bench. And that said, thank you both for your argument. Thank you, Your Honor. We will reserve decision.